Raymond Anthony HARVEY, Appellant,

v.

STATE of Alaska, Appellee.

No. 3921.

Supreme Court of Alaska.

Dec. 21, 1979.

Bruce A. Bookman, Anchorage, for appellant.

Charles W. Cohen and John A. Scukanec, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, and MATTHEWS, JJ., DIMOND, Senior Justice, and HANSON, Superior Court Judge.

## OPINION

CONNOR, Justice.

The primary question in this appeal is whether error was committed in admitting evidence of previous bad acts of the appellant.

The case arises out of the tragic death of 18 month old Curtis Carlson. At the time of his death, Curtis was living with Leeoma Carlson, his mother, and Tony Harvey, the appellant here. On the evening of July 24, 1977, Harvey spanked Curtis numerous times on his buttocks and lower body because he would not drink his milk. The next morning, Curtis was again spanked for refusing to drink some juice. During this spanking Curtis went into convulsions. Harvey picked him up by the arms and began to shake him, whereupon Curtis became limp. In attempting to revive the child, Harvey applied ice to his face, and gave him mouth-to-mouth resuscitation. When Curtis' breathing became lower, Harvey told Leeoma to call the paramedics. Curtis was taken to the hospital where the examining physician detected hemorrhaging of the brain and right eye, healing fractured ribs and extensive bruises on the lower back, buttocks and anus. Curtis died later that day. An autopsy indicated that

his death resulted from injuries to the brain and head, caused by some sort of blunt force injury to the head.

Harvey was indicted by the grand jury for manslaughter [1] and negligent homicide.[2] At trial the defense focused on Leeoma's character [3] and her exclusive custody of Curtis during the days preceding his death,[4] in an effort to show that she, and not Harvey, could have been responsible for the abuse that caused Curtis' death. Karen Cole, with whom Leeoma and Harvey previously lived, testified for the prosecution that Harvey had beaten Curtis and her own son on several earlier occasions. The jury acquitted Harvey of the manslaughter charge, but convicted him of negligent homicide.

Harvey has raised three assignments of error. He first claims that the indictment must be dismissed as unsupported by the evidence presented to the grand jury.[5] The negligent homicide charge states that Harvey "did unlawfully, by culpable negligence, kill Curtis Carlson by striking said Curtis Carlson with his hands with excessive force and violence." Since the pathologist who examined Curtis told the grand jury that death resulted from a "blunt force injury of some kind" to the head, and no evidence showed that Harvey ever struck Curtis on the head, Harvey claims that the indictment must be dismissed. He argues that it does not meet the test of State v. Parks, 437 P.2d 642, 644 (Alaska 1968), that an indictment will be upheld only if backed by evidence "adequate to persuade reasonable minded persons that if unexplained or

uncontradicted it would warrant a conviction . . . ."[6]

We cannot agree with this contention in two respects. First, we do not find that a "blunt force injury to the head" necessarily requires a blow to the head itself; an impact of sufficient force elsewhere on the body could inflict such an injury. Second, we do not find that the term "striking," as used in the indictment is limited to a blow or a punch, but may include other forms of violent physical conduct.[7] The purpose of an indictment is "to furnish the accused with a description of the charge against him to enable him to prepare his defense . . . ." Thomas v. State, 522 P.2d 528, 530 (Alaska 1974), quoted in Christie v. State, 580 P.2d 310, 321 (Alaska 1978). The indictment here was sufficient to put Harvey on notice that the state would be trying him for his harmful physical acts directed against Curtis. Since the grand jury testimony established that Harvey had severely spanked the child and then bounced him against the floor, we must conclude that the indictment was sufficiently supported by the evidence.

Harvey's second claim of error is closely related. He argues that there was a fatal variance between the indictment and the evidence adduced at trial, that Curtis died from an indirect injury to the head probably not caused by a blow.[8] We have already found that the indictment gave Harvey constitutionally adequate notice of the charges against him. Further, the

---

1. AS 11.15.040.

2. AS 11.15.080.

3. Evidence was presented that Leeoma was herself abused as a child. Testimony was given that Curtis had been placed in a foster home when he was born because Leeoma "had a lot of growing up to do," and that Leeoma had herself beaten Curtis to the point of causing bruises on previous occasions.

4. Leeoma and Curtis moved out of Harvey's apartment around July 19, 1977 and did not return until the day before Curtis died on July 25, 1977.

5. His timely motion to this effect was denied by the trial court.

6. This test was derived from Criminal Rule 6(k) with its similar wording.

7. Webster's Third New International Dictionary (1969) defines "to strike" in relevant part as "to touch or hit with some force." We have found no cases construing the word in this context.

8. The trial court denied his request for an instruction to the jury that "striking" did not include shaking.

grand jury proceedings, of which Harvey obtained a transcript, showed clearly that the state would not be confining its case to an alleged blow to the head, but would seek to show other acts by Harvey causing or contributing to the child's death. While two witnesses' testimony at trial differed slightly from their statements to the grand jury, the difference was not so great as to unfairly surprise Harvey or constitute a material variance.[9] Finally, even if we were to find a material variance, we would have to conclude that it was not prejudicial.[10]

We find merit in Harvey's final claim of error. He asserts that the trial court erred prejudicially in admitting, over his objection, evidence of a severe beating that he inflicted on Karen Cole's child. Evidence of prior misconduct is never admissible to show bad character or criminal propensity, Wigmore, *Evidence* § 193 (3d ed. 1940), but may be admissible if relevant to a material fact in issue, such as motive, intent or knowledge. Alaska Rule of Evidence 404(b);[11] *Ladd v. State*, 568 P.2d 960, 968 (Alaska 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978); *Eubanks v. State*, 516 P.2d 726, 729 (Alaska

1973); Wigmore, *Evidence* § 190, at 215–17 (3d ed. 1940).

In the present case, the trial court admitted the disputed evidence to show malice and intent.[12] Harvey argues that since malice and intent are not elements of either of the crimes charged, the evidence was irrelevant and should not have been admitted. The state concedes that malice is not an element of manslaughter or negligent homicide,[13] but contends that the evidence was necessary to show general criminal intent. We have recognized that a requirement of general criminal intent is implicit in offenses which were felonies at common law. *Speidel v. State*, 460 P.2d 77, 79 (Alaska 1969). Nevertheless, if we were to hold, as the state urges, that evidence of prior bad acts may be introduced to establish the general mens rea required by *Speidel*, such evidence would be admissible in virtually every felony trial. We decline to broaden the intent exception to the established rule prohibiting evidence of prior misconduct to the extent that it would destroy the rule.

Moreover, the central issue in this case was one of causation, not intent. Harvey did not dispute the fact that he severely

9. The pathologist was slightly less certain at trial than he had been before the grand jury that Curtis' death resulted from a blow to the head. Leeoma testified at trial that Harvey had shaken Curtis hard for ten seconds before bouncing him; her grand jury testimony omitted mention of this shaking.

10. Harvey argues that he had not attempted to impeach the pathologist's qualifications or procure an independent pathological investigation, because he viewed the pathologist's testimony as favorable to his defense. Once he learned that the state would not be relying on a theory of the case supposing a blow to the head, he could have requested a continuance to enable him to do one or both of the above. He made no such request.

11. Alaska Rule of Evidence 404(b) provides: *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

12. Harvey did not request and the superior court did not give the jury an instruction as to the limited purpose for which such evidence was to be considered. Thus, the absence of such an instruction is not in issue in this appeal.

13. The state's contention that the evidence was properly admitted to prove the greater, yet uncharged offense of murder is unpersuasive. In support of this argument the state cites a number of cases which have held that a defendant cannot complain that the evidence tended to show a greater offense than the one for which he was charged and committed. *E. g., State v. Eyle*, 236 Or. 199, 388 P.2d 110 (1963); *Carson v. State*, 54 Okl.Cr. 104, 16 P.2d 265 (1932); *Price v. State*, 152 Miss. 694, 120 So. 751 (1929). We have found no cases, however, which have permitted evidence of prior misconduct to prove an element of a greater offense than the one charged and we decline to do so.

spanked Curtis.[14] Relying on the grand jury testimony of the pathologist that Curtis' death resulted from a blow to the head and the fact that there was no evidence that Harvey ever struck Curtis on the head,[15] the defense argued that the blows inflicted by Harvey could not have been the cause of death. Therefore, the real question before the jury was not whether Harvey intended to strike Curtis, but whether he caused the child's death.

Alternatively, the state asserts that evidence of Harvey's prior acts of child abuse was relevant to show that the harm he inflicted on Curtis was not the product of inadvertence or accident. While evidence of similar past misconduct may be introduced to negate a defense of accident or mistake,[16] no such defense was raised here. Therefore, the evidence was not admissible on that basis.

Thus, the evidence sought to be admitted was not admissible under any of the theories advanced by the state. Evidence of past abusive conduct is often available in child abuse cases and strictly speaking is never totally irrelevant. However, its relevance often exists only because it reflects on the propensity of a past offender to continue a pattern of child abuse. This is precisely the type of inference Rule 404(b) is intended to prevent. For this reason, evidence of past incidents of child abuse is generally held to be more prejudicial than probative.[17]

> "Although probative, this evidence may overly influence the jury. Courts usually exclude propensity evidence in order to prevent the jury from concluding that the defendant is guilty of the crime charged simply because he has the propensity to commit that crime or has committed such a crime in the past."

Plaine, *Evidentiary Problems in Criminal Child Abuse Prosecutions, supra,* n. 13, at 264.

In the case at bar, evidence that the defendant had on a prior occasion beaten another child to the point of leaving belt marks was erroneously admitted. We conclude that this error was such as to have an appreciable effect on the jury's verdict.[18] We must reverse and remand this case for a new trial.

REVERSED and REMANDED.

BOOCHEVER and BURKE, JJ., not participating.

---

14. The defendant told a police officer shortly after the incident that he spanked Curtis "fairly hard" for "approximately 15 minutes," and this was never refuted by the defense at trial.

15. On cross-examination, defense counsel established that Leeoma was continuously with Curtis during the days preceding his death and that during this time the only places she saw Harvey strike the child were on the buttocks and lower spine.

16. *See* McCormick, Law of Evidence § 190 at 450 (2d ed. 1972); Plain, L., Evidentiary Problems in Criminal Child Abuse Prosecutions, 63 Geo.L.J. 257, 263–266 (1974). At least one court has refused to admit testimony of prior abuses even to refute a claim of accident on the grounds that the evidence was immaterial to the charges. *State v. Hunt,* 2 Ariz.App. 6, 406 P.2d 208, 216 (1965).

17. Evidence admissible, pursuant to Alaska R.Evid. 404(b), under one of the exceptions to the general rule can be ruled inadmissible as more prejudicial than probative under Alaska R.Evid. 403.

18. *Love v. State,* 457 P.2d 622, 632 (Alaska 1969).