Larry O. LARSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 6179.

Court of Appeals of Alaska.

Dec. 3, 1982.

Susan Orlansky, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., SINGLETON, J., and CRANSTON, Superior Court Judge.*

## OPINION

SINGLETON, Judge.

Larry Larson and Richard Buza broke into a home and assaulted and robbed the occupants. As a result, Larson was convicted of burglary in the first degree, AS 11.-46.300(a)(1), robbery in the first degree, AS 11.41.500(a)(1), and assault in the second degree, AS 11.41.210(a)(1), and sentenced to

* Cranston, Superior Court Judge, sitting by assignment made pursuant to article IV, section

prison. Larson appeals his convictions. He contends that the trial court erred in four respects: (1) in denying Larson the right to present witnesses on his own behalf, (2) in requiring Larson to wear handcuffs if he wished to attend a jury view of the scene of the crime, (3) in failing to give an instruction requested by the defense regarding eyewitness testimony, and (4) in failing to grant a directed verdict of acquittal. We have examined the record and reviewed the arguments of the parties and we find no error. We therefore affirm the judgment of the trial court.

On July 9, 1980, at approximately 3:30 a.m., Larson and Buza invaded a residence occupied by Dennis and Mischelle Smith. Buza was apparently searching for cocaine and believed that the Smiths were dealers. Larson and Buza terrorized the Smiths for some time, stomped the Smiths' puppy to death, assaulted the Smiths and robbed them of ten dollars at gunpoint. Apparently satisfied that there was no cocaine to be found, the invaders left and the Smiths immediately summoned the police and a neighbor, Steven Mills.

Mills observed two men answering Mischelle's description approximately seventy yards from the Smiths' residence. He pointed them out to Mischelle and she positively identified them as the assailants. Mills yelled to the two men and they immediately ran off. Shortly thereafter the police arrived and one of the officers took Mills in his car to survey the neighborhood. Mills observed the two men identified by Mischelle Smith and pointed them out to the officer who stopped them. Shortly thereafter Dennis Smith positively identified these two men as the assailants. The two men were Larry Larson and Richard Buza. The weapons used in the crime were subsequently found in the shrubbery near the Smiths' residence and positively identified by the Smiths.

16 of the Constitution of Alaska.

Buza and Larson were tried separately. Buza was tried first and convicted. Shortly thereafter, and before Larson was tried, Donovan Hash, a drug addict and petty criminal, approached Buza's attorney and executed an affidavit. In the affidavit he alleged that he had been driving with one David McKinney shortly after the Smith robbery-burglary in the vicinity of the Smiths' residence. McKinney allegedly told Hash that he [McKinney] had attempted to rob a cocaine dealer a few nights earlier and had surprised a young military couple instead. Hash indicated that he knew Richard Buza and that McKinney and Buza were very similar in appearance. Hash also indicated that he thought McKinney had told him at that time that a dog had been killed during the burglary and that one of the victims was assaulted in a manner similar to the assault on Mr. Smith. Larson called McKinney as a witness out of the presence of the jury and *voir dired* him. McKinney denied making the statements attributed to him by Hash. He specifically denied being involved in a robbery-burglary at the time and place in question. Larson then attempted to call Hash as a witness. The prosecutor told the court that Hash had repudiated his affidavit in conversations with police investigators. The court ruled that Hash could not testify before the jury regarding the matters in his affidavit and Larson did not call Hash to make a further offer of proof. Therefore, it is not possible to determine from this record what he would have said if called. The court excluded the testimony of McKinney and Hash on the grounds that it was irrelevant. An apparent additional ground was that the probative value of the testimony of Hash, which was not corroborated, was outweighed by the risk that it would confuse the issues. *See* Alaska R.Evid. 403.

Larson argues that the trial court erred in excluding the testimony of McKinney and Hash. He reasons that McKinney should have been permitted to testify before the jury and deny that he confessed to the Smith burglary to Hash. Larson contends that McKinney's denial would then establish a foundation to permit him to call Hash to testify and either admit or deny that McKinney had confessed to him. If Hash denied that McKinney confessed, then Larson would offer Hash's affidavit describing the confession as a prior inconsistent statement. Larson reasons that the affidavit would then serve two purposes. First, it would impeach Hash and second, it would provide substantive proof of its contents, *i.e.,* that McKinney had confessed. *See* Alaska R.Evid. 801(d)(1). Alternatively, if Hash admitted that McKinney had confessed to him, then Hash's testimony would provide extrinsic evidence that McKinney had made a prior inconsistent statement, *i.e.,* had admitted the robbery on one occasion but denied it in court. In Larson's view this prior inconsistent statement by McKinney would be admissible for its truth, *i.e.,* that McKinney, not Buza, had participated in the Smith robbery-burglary. Alaska R.Evid. 801(d)(1). Since Larson was captured with Buza, not McKinney, Larson concludes that McKinney's confession, if admitted as substantive evidence, would tend to weaken the eyewitness identifications of Larson as a participant in the crimes committed at the Smith residence. Larson notes that the eyewitnesses were more positive in their identification of Buza than they were of him. Thus, if the jury had a reasonable doubt that Buza, rather than McKinney, was a participant, then they should also have had a reasonable doubt that Larson was a participant.

McKinney was available both in the sense of being present in the courtroom and apparently in the sense of being willing to talk about his contacts and conversations with Hash. *See* Alaska R.Evid. 804(a)(1)–(5). McKinney denied making any confessions. There is nothing in the record which indicates that McKinney would have refused to testify if queried about his activities the night of the Smith burglary. Consequently, Larson contends the jury could have carefully considered the evidence against Buza and the evidence against McKinney and independently determined which of the two was a perpetrator of the Smith crimes.

Larson recognized that there might be a hearsay problem regarding McKinney's alleged confession and sought to avoid it on two grounds. First, he contended that Alaska Rule of Evidence 804(b)(3) permits statements against penal interest to be admitted as an exception to the hearsay rule. Second, he argued that Alaska Rule of Evidence 801(d)(1) classifies prior inconsistent statements by one present and available as a witness as not within the hearsay rule.

Alaska Rule of Evidence 804(b)(3) only applies, however, where the person whose statement is being offered is unavailable, and there are "corroborating circumstances [which] clearly indicate the trustworthiness of the statement."

Since McKinney was available and there was no evidence tending to corroborate McKinney's alleged confessions, Larson conceded at oral argument that Alaska Rule of Evidence 804(b)(3) would not support the admissibility of McKinney's alleged confession. He argues, nevertheless, that the statement is not hearsay under Alaska Rule of Evidence 801(d)(1) and therefore should have been admitted.

We agree that a confession by McKinney would have been relevant since it had some tendency to impeach the eyewitness identifications of Buza and by extention undermine the eyewitness identifications of Larson. Alaska R.Evid. 401. McKinney's denial that he had committed the robbery was, however, not relevant. Nor was McKinney's prior statement if it is viewed only as impeachment, since McKinney did not testify before the jury and there was therefore no testimony of his subject to impeachment. It is only if McKinney's prior statement is admitted as substantive evidence that he, rather than Buza, committed the robbery, that McKinney's testimony becomes relevant.

Alaska Rule of Evidence 801(d)(1) provides:

(d) STATEMENTS WHICH ARE NOT HEARSAY. A statement is not hearsay if

(1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and the statement is

(A) inconsistent with his testimony. Unless the interests of justice otherwise require, the prior statement shall be excluded unless

(i) the witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement or

(ii) the witness has not been excused from giving further testimony in the action; . . .

Since McKinney was available to testify and could be given the opportunity to deny having made the statements attributed to him by Hash, the requirements of the rule would appear to have been met.

We note, however, that Alaska Rule of Evidence 801(d)(1) was intended to codify the ruling in *Beavers v. State,* 492 P.2d 88 (Alaska 1971). Commentary to Alaska R.Evid. 801(d), at 221. In *Beavers* the court held that it was within the trial court's discretion to admit a prior inconsistent statement as substantive evidence.

We hold that the trial judge did not abuse his discretion in holding that the prejudicial effect of the evidence of McKinney's alleged confession outweighed any probative value it might have had in impeaching the eyewitnesses' identification of Buza and undermining their identification of Larson. Admission of the alleged confession would serve to confuse the jury and would require the state to prove McKinney's innocence. Alaska R.Evid. 403. We further hold that an analysis based on Alaska Rule of Evidence 403 is appropriate in determining whether the court should exercise its discretion to admit evidence of a prior inconsistent statement as substantive evidence in the case. *Beavers,* 492 P.2d 88; Alaska R.Evid. 801(d)(1). We conclude that the following factors support the trial court's ruling: (1) Hash apparently had withdrawn a large part of his statement regarding McKinney's confession; (2) McKinney denied ever having made the confession and denied having committed the robbery-bur-

glary; (3) neither the fact that McKinney made the statement nor the fact that McKinney committed the crimes was corroborated by other evidence; and (4) McKinney allegedly looked like Buza rather than Larson. We therefore find no error in the refusal to permit Hash or McKinney to testify before the jury. *See State v. Williams,* 650 P.2d 1202, 1212–13 (Ariz.1982) (court did not err in excluding evidence of uncorroborated threats by third person against the decedent. Arizona R.Evid. 403).

■ *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) is distinguishable. In *Chambers* the third party's confession was corroborated by other evidence. Larson is therefore incorrect in reading *Chambers* for the proposition that a rule similar to Alaska Rule of Evidence 403 can never be applied to exclude evidence offered by a defendant in a criminal case which is minimally relevant under Alaska Rule of Evidence 401. While Larson is correct that credibility of witnesses and the weight of evidence is usually left to the jury, the trial court must consider the probative value of evidence in carrying out the balancing required by Alaska Rule of Evidence 403. We are satisfied that the trial court did that in this case and reached a just result. *See* Commentary to Alaska R.Evid. 403, at 69–71. We specifically hold that Alaska Rule of Evidence 403, when properly applied, does not violate a defendant's constitutional right to confront the witnesses against him and present evidence in his own behalf.

■ Larson argues that the trial court infringed his right to be present at a jury view by stipulating that if Larson wished to be present, he would have to wear handcuffs. We do not find that Larson preserved this issue by making a timely objection. Larson did object when the state requested a jury view of the Smith residence and its vicinity. The objection was overruled. Larson's counsel did ask, "how are we going to transport Mr. Larson. Mr. Larson as you know is in custody." To which the court replied:

I don't care how he's—he's going to be transported just the way they transport people who are in custody. That's exactly the way he's going to be transported.

Larson's counsel did not object. He did ask that Larson be permitted to waive his right to be present at the jury view explaining that he did not want the jury to see Larson in handcuffs. Larson entered a personal waiver on the record. While the trial court did indicate a willingness to defer to the State Troopers in determining whether and to what extent security measures were warranted, a practice disapproved in *Williams v. State,* 629 P.2d 54 (Alaska 1981), we do not find that Larson communicated to the court a sufficient determination to attend the jury view without restraints to enable him to contend on appeal that his right to be present at all significant proceedings during trial was violated. Nor do we conclude on this record that any objection Larson would have made would have been fruitless.

■ Larson argues that the trial court erred in refusing to give an instruction on eyewitness identification based on *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972).[1] We disagree. As long as

---

1. Defendant's proposed instruction was as follows:

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

[7] Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

the jury is instructed on the elements of the charge and the elements of any defenses with support in the evidence, the trial court has substantial discretion in determining what instructions to give. *Buchanan v. State,* 561 P.2d 1197 (Alaska 1977).

■ In this case the trial court instructed the jury that they must determine the credibility of witnesses, drawing special attention to:

The extent of the witness's opportunity to observe, hear or otherwise perceive any matter about which testimony is given;

The extent of the witness's capacity to perceive, to recollect or to communicate any matter about which he or she testifies; ...

The jury was also specifically instructed that the state had the burden of proving beyond reasonable doubt the defendant's identity as the one who committed the crime.

Given these instructions, the court did not err in failing to give the *Telfaire* instruc-tion. *Dayton v. State,* 598 P.2d 67 (Alaska 1979); *Williams v. State,* 652 P.2d 478 (Alaska App., 1982).

Finally, Larson argues that there was insufficient evidence to place him at the scene of the crimes. Alternatively, he argues that assuming he was present, there was insufficient evidence to establish that he was an accomplice to Buza's crimes.

■ Shortly after the incidents in question, Mischelle Smith positively identified Larson and Buza to her neighbor, Steven Mills, as the persons who had assaulted her and her husband. Mills, in turn, positively identified Larson and Buza to Officer Reiman as the men pointed out to him by Mischelle Smith. Reiman stopped Larson and Buza in the vicinity of the Smith residence at which point Mr. Smith positively identified Larson and Buza as the assailants. While the Smiths were less certain in their identification of Larson at the time of trial, we believe their contemporaneous identifications provided sufficient evidence to enable the jury as reasonable people to

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

[8] Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.]

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

[9] If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

[(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

[10] (4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

*United States v. Telfaire,* 469 F.2d 552 (D.C.Cir. 1972).

conclude that Larson was present in the Smith residence while the crimes were being committed. The trial court therefore did not err in denying a judgment of acquittal on this ground. *Ross v. State*, 586 P.2d 616, 618 (Alaska 1978).

■ Even if we assume that Larson was the second and smaller intruder at the Smith residence, there is nonetheless, substantial evidence that he was an accomplice to any crime Buza might have committed there. Larson was masked and armed with a rifle. He kept the Smiths covered while Buza robbed Mr. Smith of the ten dollars. Larson forced Mischelle into the bedroom at gunpoint and prodded her with his rifle when she hesitated. Larson wishes us to consider each of his acts and those of Buza in isolation but this would be inappropriate. In determining accomplice liability, we must look to the criminal enterprise in total. *See Hensel v. State*, 604 P.2d 222, 233–34 (Alaska 1979). We are satisfied that the evidence establishes that Larson was sufficiently involved in the criminal enterprise to be found to be an accomplice to any crime Buza committed at the Smith residence.

The judgment of the superior court is AFFIRMED.