**Douglas GARNER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–731.**

Court of Appeals of Alaska.

Jan. 3, 1986.

Rehearing Denied Jan. 24, 1986.

Richard H. Friedman, Royce, Wollenberg & Friedman, Sitka, for appellant.

Michael S. McLaughlin, Asst. Atty. Gen., Anchorage and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Douglas Garner was convicted following a jury trial, of manslaughter, AS 11.41.120, for causing the death of eighteen-month-old Justin Pahang on September 29, 1983. Justin Pahang was the son of Linda Miller and Garner was Miller's live-in boy friend.

On September 27, 1983, Justin was sick and Garner stayed home with him while Miller went to work. The facts presented at trial establish that Justin died from injuries, the result of child abuse, which were inflicted on September 27, 1983. Only two people could have inflicted Justin's injuries that day: Garner or J.H., the next door neighbor in the apartment building. J.H. had watched Justin for part of the day on September 27. At trial, Judge Schulz admitted the following evidence over Garner's objection:

1. A neighbor in an apartment adjoining the Miller-Garner apartment, Toy Wilson, testified that approximately ten days before the injuries which led to Justin's death were inflicted, she heard noises which might have indicated a child was being beaten coming from the Miller-Garner apartment. In particular Wilson testified, "I heard what sounded like a male voice telling the child, 'Now, this will teach you,' or, 'Here, don't do that,'" interspersed with banging and crying.

2. A worker from Justin's day-care center testified that four months prior to Justin's death, Justin would raise his arms in a protective posture when she approached him. She also testified Justin did not want to go with Garner when he picked Justin up from the center. Finally, the worker testified that in the middle of July or in early August, Justin "had bruises on his forehead and scratches on the sides of his face, and then light red bruises across the back of his neck."

3. Edward Allen testified that Garner had "verbally abused" Justin.

4. Linda Miller, Justin's mother, testified that in the months before Justin's death, she had noticed bruises on Justin and that he appeared to be afraid of Garner.

Garner first argues that trial Judge Thomas E. Schulz erred in admitting this evidence which tended to show that Garner had abused Justin on occasions prior to September 27, 1983.

Alaska Rule of Evidence 404(b) provides:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Alaska Rule of Evidence 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *Lerchenstein v. State,* 697 P.2d 312, 315–16 (Alaska App.1985) *petition for hearing granted,* (Alaska, June 25, 1985), we discussed the interelationship of A.R.E. 403 and 404(b):

The exclusionary provision of Evidence Rule 404(b) represents the "presumption in our law that the prejudicial effect of introducing a prior crime outweighs what probative value may exist with regard to propensity. No case by case balancing is permitted." *Oksoktaruk v. State,* 611 P.2d 521, 524 (Alaska 1980). When, however, a prior bad act is relevant to a material fact other than propensity, the

court may admit the evidence if an Evidence Rule 403 balancing shows the evidence to be more probative than prejudicial. [Footnote omitted]. In making this balance, the Alaska Supreme Court has cautioned that "[i]f prior crimes were found admissible whenever offered to prove a fact classified as material to the prosecution's case, 'the underlying policy of protecting the accused against unfair prejudice ... [would] evaporate through the interstices of the classification.'" *Oksoktaruk*, 611 P.2d at 524, *quoting* E. Cleary, *McCormick on Evidence* § 190, at 453 (2d ed. 1972). The trial court's inquiry, then, is two-fold. First, the court must determine that the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine that the nonpropensity relevance outweighs the presumed highly prejudicial impact of the evidence. [Citation omitted.] If there is no genuine nonpropensity relevance, the balancing step is never reached.

Applying the standards which we set forth in *Lerchenstein*, we conclude that Judge Schulz did not abuse his discretion in admitting the evidence which tended to indicate that Garner had abused Justin on prior occasions.

■ First, the central issue in this case was identity: whether Justin died from injuries which were inflicted by Garner or from injuries inflicted by J.H. The evidence indicating prior child abuse by Garner served to identify Garner as the person who had abused Justin. Therefore, there was a legitimate, non-propensity reason to admit the evidence.[1]

■ Second, the evidence in question all related to incidents which involved Justin, and occurred close in time to Justin's death. *See Lerchenstein*, 697 P.2d at 319. We also note that Judge Schulz gave the jury a cautionary instruction regarding the use of the prior incidents. *See Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981). It appears to us that Judge Schulz could properly determine that the probative value of the evidence outweighed the danger of unfair prejudice. We find no error.

■ Garner next contends that Judge Schulz erred in refusing to allow him to present evidence that J.H. had abused her own child. Garner wanted to introduce this evidence in order to strengthen his contention that J.H. was the person who abused Justin and caused his fatal injuries. Garner made an offer of proof that he could produce at least two witnesses who would testify that they had observed J.H. abuse her own child to the point where they became concerned for the child's safety. The witnesses would purportedly have testified that when J.H.'s child would cry, J.H. would lose control and would, on occasion, violently shake or hit the child. One of the witnesses was allegedly concerned enough for the child's safety to take J.H.'s child away from J.H. for a short time.

Judge Schulz ruled that Garner could cross-examine J.H. about these alleged incidents of child abuse, but refused to allow the testimony of the witnesses. In reaching his conclusion, Judge Schulz relied in part on the fact that the alleged incidents involved J.H.'s abuse of her own child, not

1. Garner cites *Harvey v. State*, 604 P.2d 586 (Alaska 1979). In that case the court stated:

Evidence of past abusive conduct is often available in child abuse cases and strictly speaking is never totally irrelevant. However, its relevance often exists only because it reflects on the propensity of a past offender to continue a pattern of child abuse. This is precisely the type of inference Rule 404(b) is intended to prevent. For this reason, evidence of past incidents of child abuse is generally held to be more prejudicial than probative. [Footnote omitted.]

In *Harvey*, the trial court admitted evidence that the defendant had previously severely spanked a child. This child was not the victim in the case. The supreme court held that the evidence was improperly admitted. In reversing, the supreme court pointed out that the defendant had admitted that he severely spanked the victim, and that the question in the case was whether the injuries inflicted by Harvey caused the victim's death. The supreme court pointed out that, under the facts of the case, the evidence of the prior spanking could not properly have been admitted to establish Harvey's identity as the assailant or the absence of mistake or accident.

Justin. Judge Schulz also relied on the fact that J.H. had allegedly abused her child when the child was crying; there was no evidence that Justin had cried while J.H. was watching him.

On cross-examination J.H. denied ever shaking her daughter so violently that the daughter's physical safety was threatened or that anyone had ever taken custody of her daughter after an incident of abuse. However, Garner was able to introduce testimony that the police had investigated reports that J.H. had abused her daughter.

Like evidence of Garner's previous misconduct, admission of evidence of J.H.'s alleged abuse of her daughter is governed by Evidence Rules 404(b) and 403. Again, we are to reverse the ruling of the trial judge only if we are convinced that he has abused his discretion in refusing to admit the evidence. *Eben v. State*, 599 P.2d 700, 710 (Alaska 1979). However,

> [t]he right of a defendant to present his own witnesses to establish a defense is a fundamental element of due process of law. [Citation omitted.]

> While the right to call and examine witnesses is not absolute,

>> and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process ... its denial or significant diminution calls into question the ultimate " 'integrity of the fact-finding process' " and requires that the competing interests be closely examined.

*Smaker v. State*, 695 P.2d 238, 240 (Alaska App.1985), (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297, 309 (1973), quoting *Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)).

In *Keith v. State*, 612 P.2d 977, 981–84 (Alaska 1980), the supreme court emphasized the importance of the defendant's right to fully present his defense. The court held that the trial court erred in excluding from evidence parts of a journal written by the person who Keith was charged with murdering. Keith wanted to introduce the journal to attempt to show the victim's "mental instability, paranoia, hatred of women, and ... violent nature." *Id.* at 983. Keith wanted to show these character traits to support his testimony that he acted in self defense. The court stated:

> The excerpts from the journal which Keith sought to admit do clearly portray the character traits mentioned above, and its probative value is such that it outweighs any concern of prejudice, confusion or waste of time. Here Keith was on trial for murder, and there were no witnesses other than Keith to the immediate events preceding the shooting. *In such circumstances, Keith was entitled to present his version of the events and evidence supporting it in as full a manner as possible.*

*Id.* at 984 (emphasis added).

In Garner's trial the issues were tightly-focused. Justin Pahang died from injuries which were the result of child abuse, and either Garner or J.H. inflicted the injuries. There was no question that J.H. had the opportunity to inflict the injuries since she had been alone with Justin. *James v. State*, 671 P.2d 885, 892–94 (Alaska App. 1983), *rev'd on other grounds*, 698 P.2d 1161 (Alaska, 1985); *Larson v. State*, 656 P.2d 571, 573–75 (Alaska App.1982).

Under these circumstances it was particularly critical for Garner's defense to present evidence which suggested that J.H., not Garner, had inflicted the injuries which killed Justin. We agree with Judge Schultz that the offered evidence had some weaknesses in terms of showing that J.H. had caused the injuries which killed Justin.[2] However, the jury could have reasoned that if J.H. had abused her own daughter, that she might have been the person who abused Justin. There was testimony that

---

**2.** While Judge Schulz based his decision, in part, on the absence of evidence that Justin had cried while in J.H.'s care, and that J.H. had allegedly abused her daughter only when her daughter cried, we believe the jury could have reasoned that it was possible that Justin, a child of eighteen months, may have cried while in J.H.'s care.

Justin's brain injuries which caused his death were caused by violently shaking his head back and forth and a blow to the head. From the record it appears that Garner could persuasively argue that these injuries were consistent with reports of abuse which J.H. allegedly inflicted on her daughter. Finally, we know from the record that the alleged incidents of abuse had occurred close in time to Justin's death since J.H.'s daughter was five months old at the time of Justin's death. We conclude that, given the importance of this evidence to Garner's defense, the trial court abused its discretion in not admitting the evidence.[3]

██ The state argues that the failure to admit the evidence of the alleged abuse by J.H. of her daughter was, if error, harmless. The state points out that Garner was able to cross-examine police officers about their investigation of this case. In doing so, Garner was able to cross-examine the police about the fact that they had received reports that J.H. had abused her daughter. However, under Judge Schulz's ruling, Garner was unable to present any direct evidence of the alleged abuse by J.H. Judge Schulz instructed the jury that the reports of abuse by J.H. were admitted "only to give ... the background of the information that the officer had during the course of his investigation" and further that the reports were not admitted to establish the truth of what was said in the reports. This clearly should have limited the effectiveness of the evidence that J.H. had abused her daughter. Given the possibly critical nature of the evidence that J.H. had formerly abused her daughter, we con-

clude that the error in refusing to admit the evidence was not harmless.[4]

The conviction is REVERSED.

SINGLETON, J., concurs and dissents.

SINGLETON, Judge, concurring and dissenting.

I concur with the court's resolution of most of the issues in this case. I cannot agree, however, with the court's decision that the trial court abused its discretion by precluding Garner from offering extrinsic evidence under Alaska Rules of Evidence 404 and 403, that J.H. abused her own child on prior occasions, and therefore respectfully dissent from that portion of the opinion.

Alaska Rule of Evidence 404(a) provides that evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. This admonition is repeated in Rule 404(b), with certain exceptions:

> (b) *Other Crimes, Wrongs or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Alaska Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or mislead-

---

**3.** We believe that there is generally less danger of unfair prejudice under A.R.E. 403 in admitting prior bad acts or crimes of a person who is not a defendant than there is when the prior bad acts or crimes involve the defendant. The great danger of admitting evidence of prior bad acts or crimes of a defendant is that the jury may conclude that the defendant is a bad person and convict him based upon that evidence. *Oksoktaruk v. State,* 611 P.2d 521 (Alaska 1980). However, this danger does not exist where the person involved in the prior bad acts or crimes is not the person on trial. Therefore, some courts have specifically stated that there is a

more liberal standard in allowing evidence of prior bad acts or crimes where the defendant is attempting to use this evidence to establish that someone else committed the crime. *See United States v. Aboumoussallem,* 726 F.2d 906, 910–12 (2nd Cir.1984); *People v. Flowers,* 644 P.2d 916, 918–20 (Colo.1982), *appeal dismissed,* 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41 (1982).

**4.** Our disposition of this issue makes it unnecessary to reach the other issue which Garner raises.

ing the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We have derived two principles from an examination of these rules: (1) a trial court has no discretion to admit evidence of a character trait solely for the purpose of proving that the person acted in conformity with that trait at a later time, but (2) the court has discretion to admit character evidence for other purposes, if its probative value outweighs the considerations set out in Rule 403, *i.e.* confusion of issues and delay of the trial. *Moor v. State*, 709 P.2d 498 (Alaska App., 1985); *Lerchenstein v. State*, 697 P.2d 312, 315–16 (Alaska App. 1985) *petition for hearing granted*, (Alaska, June 25, 1985).

The line separating the prohibited uses from the permitted uses of character evidence is admittedly a narrow one. Nevertheless, there are distinguishing factors. One commentator gives the following example of a prohibited use of character evidence:

> [T]here would probably be a general consensus that the following example illustrates an impermissible propensity inference: The defendant is charged with murdering his wife by stabbing. He admits being present at the time of the fatal incident, but claims that a third person stabbed his wife. To show that the defendant was the assailant, the prosecutor offers to prove that on several previous occasions the defendant had become involved in fistfights with neighbors.

The relevance of the fistfight evidence is clearly dependent upon a propensity inference: The fact that the defendant has been violent on previous occasions shows that he—at least in comparison to people who have not been violent—has a propensity for violence, and from this propensity the factfinder is asked to infer that the defendant was violent on the occasion in question. Moreover, all of the factors that justify excluding some specific acts evidence are present. If the defendant disputes his involvement in the fistfights, there may be time-consuming and distracting litigation of collateral issues. The factfinder may be more willing to return a guilty verdict after hearing the evidence simply because the defendant appears to be a bad person. Finally, the probative value of several fistfights with neighbors to prove a deadly assault with a knofe against one's spouse is not great. [footnotes omitted.]

Kuhns, *The Propensity to Misunderstand the Character of Specific Acts Evidence*, 66 Iowa L.Rev. 777, 782–83 (1981).

In this case, Garner is charged with the homicide of a child and seeks to defend by showing that J.H. was present at approximately the time the incident occurred and committed the crime. To show that J.H. was the assailant, he offers to prove that on two other occasions J.H. became angry at her own child and vigorously shook her. Thus, he sought to show that J.H. had a character trait (*i.e.* a propensity to become angry to the point of violence with children), and acted in conformity with that trait by assaulting Justin Pahang, the victim. Under *Moor* and *Lerchenstein*, this evidence was inadmissible for this purpose and the trial court had no discretion to admit it.[1] *A fortiori*, it was not an abuse

---

1. While there is some suggestion in Garner's brief and in the majority opinion, that extrinsic evidence of J.H.'s treatment of her own child was somehow relevant to show her "identity" as the person abusing Justin, this is plainly wrong. While one could say, generally, that in a criminal case the "identity" of the perpetrator is always an issue, such loose language leads only to confusion. *See* 2 J. Wigmore, *Evidence* § 410, at 477–78 (Chadbourn rev.ed. 1979). Where a person's prior acts are used to identify him as the person who committed present acts, the past conduct must be virtually the mirror image of the present conduct. *See, e.g., Id.* § 412 at 479–80. Thus, some of the cases speak of a signature crime or a *modus operandi*. Here, as the majority opinion makes clear, the differences between J.H.'s conduct with her own child so completely predominate over any similarities to the circumstances surrounding Justin's injuries, that it simply cannot be said that that prior conduct serves to identify her as Justin's assailant. *See Galauska v. State*, 527 P.2d 459, 467–68 (Alaska 1974), *modified on other grounds*, 532 P.2d 1017 (Alaska 1975); *Adams v. State*, 704 P.2d 794, 798 & n. 5 (Alaska App.1985).

of discretion to limit Garner to cross-examination regarding it.

In my view, this case is but another in a long list of cases in which this court ignores trial court discretion and simply substitutes its judgment for that of the trial court on the discretionary issues. *See, e.g., Browning v. State*, 707 P.2d 266 (Alaska App.1985) (Singleton, J. dissenting); *Johnson v. Fairbanks*, 703 P.2d 442, 444–47 (Alaska App.1985) (Singleton, J. dissenting); *Jackson v. State*, 695 P.2d 227, 233–37 (Alaska App.1985) (Singleton, J. dissenting); *Williamson v. State*, 692 P.2d 965, 974 n. 1 (Alaska App.1984) (Singleton, J. dissenting). *See generally* Wright, *The Doubtful OmniscieAppellate Courts*, 41 Minn.L.Rev. 751 (1957).

J.H.'s feelings regarding her own child, however manifested, do not establish a motive to injure Justin.[2] *See, e.g.*, 2 J. Wigmore, *Evidence*, § 394, et. seq. (Chadbourn rev.ed. 1979). Thus, it is immaterial that, if in fact the evidence did establish that J.H. had a motive to injure Justin, her means and opportunity to injure him would make the evidence admissible. *Id.*, Section 141. In summary, this is another case in which

the probative value of the evidence was very weak and the risk of confusing the issues and extending the trial (by in effect, trying J.H. for incidents of alleged abuse of her own child) were very great. *See United States v. Aboumoussallem*, 726 F.2d 906, 910–13 (2d Cir.1984) (rejecting similar evidence presented by the defendant for these reasons). Under these circumstances, even if it was discretionary with the trial court whether to admit or exclude the evidence, a proposition I would reject, his rejection of the evidence is not an abuse of discretion. The trial court's decision not to admit the evidence should be affirmed on appeal. I, therefore, dissent from the court's decision to reverse.[3]

**2.** It is important to differentiate motive (an emotion)—the state of feeling impelling one toward an act—and intent—the mental state accompanying an act. *See* 2 J. Wigmore, *Evidence* § 306, at 259 (Chadbourn rev.ed. 1979). For this reason, Alaska cases limit use of similar act evidence to show "motive" to acts affirmatively linked with the specific crime or victim under consideration. *See Gould v. State*, 579 P.2d 535, 539 (Alaska 1978) (affirmative link between alleged prior bad acts establishing motive and the specific crime being prosecuted is required). *Accord, Fields v. State*, 629 P.2d 46, 49–51 (Alaska 1981) (prior bad check charge not admissible to show defendant's insolvency); *Burke v. State*, 624 P.2d 1240, 1246–51 (Alaska 1980) (prior sexual acts with same victim admissible). There is no evidence that J.H. had any strong feelings regarding Justin Pahang. Hence, her actions regarding her own daughter could not establish a "motive" for injuring Justin.

**3.** Two other aspects of this case require brief mention. First, Garner claims that the state and federal constitutions limit the trial court's discretion under Evidence Rule 403, citing *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct.

1038, 35 L.Ed.2d 297 (1973). While a trial court might properly apply some hypothetical evidence rule in a way which violates the constitution, it is settled in this jurisdiction that a proper application of Evidence Rule 403 does not violate the state or federal constitutions, even if it excludes some evidence arguably favorable to the defense. *See Larson v. State*, 656 P.2d 571, 575 (Alaska App.1982). If exclusion of evidence favorable to the accused violates the constitution, it violates Rule 403. Conversely, if it does not violate Rule 403 it does not violate the constitution.

Secondly, even if we interpret the interplay between Rules 403 and 404 in the defendant's favor, as the majority holds, the trial court still does not abuse its discretion in excluding defense evidence where the probative value of the evidence is weak and the risk that the "sideshow [determining whether J.H. abused her child] will swallow up the circus [whether Garner is guilty of Justin's homicide]" is great. See cases cited in *United States v. Aboumoussallem*, 726 F.2d 906, 910–12 (2d Cir.1984) upholding the exclusion of defense evidence. *See also People v. Flowers*, 644 P.2d 916, 918–20 (Colo.1982), *appeal dismissed*, 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41 (1982).