Charles SMITHART, Petitioner,

v.

STATE of Alaska, Respondent.

No. S–8358.

Supreme Court of Alaska.

Sept. 24, 1999.

---

24. *See id.* at 1375–76.

25. *See id.* at 1375.

Andrew J. Lambert, Kalamarides & Associates, Anchorage, for Petitioner.

John A. Scukanec, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Respondent.

Before: MATTHEWS, Chief Justice, EASTAUGH, FABE, and CARPENETI, Justices.

• *OPINION*

FABE, Justice.

## I. *INTRODUCTION*

Charles Smithart appeals his convictions for kidnapping, first-degree sexual assault, and first-degree murder. He argues that the trial court erred by refusing to allow his attorney to present evidence and argument that the crimes were committed by another man. Because the right to present one's defense is a fundamental right in our criminal justice system, the trial court's failure to allow Smithart to introduce relevant evidence and to argue freely that another man committed the crimes was not harmless beyond a reasonable doubt. We thus reverse and remand for a new trial.

## II. *FACTS AND PROCEEDINGS*

Eleven-year-old M.L. disappeared near Tazlina Terrace Drive near Glennallen on August 22, 1991. On September 1 a search party found her body in a heavily wooded area nearby. Charles Smithart, an Alaska Native and longtime local resident, was indicted for the kidnapping, sexual assault, and murder of M.L. Superior Court Judge Glen C. Anderson presided over a trial by jury in May through July of 1993.

At trial, the State based its case against Smithart upon circumstantial evidence. Smithart's defense entailed two key components. First, Smithart sought to establish that he was in his home when the crimes occurred. Second, Smithart attempted to show that David DeForest—a key prosecution witness who testified that he saw Smithart on Tazlina Terrace Drive at the time of M.L.'s disappearance—was the actual perpetrator of the crimes.

Before trial, Smithart moved to introduce evidence that other suspects actually committed the charged crimes. The State moved for a protective order to prevent alternative-perpetrator evidence from being admitted without a prior evidentiary hearing. The trial court ruled that while the defense was free to suggest generally that people other than Smithart committed the crimes, it could not discuss specific suspects unless it first obtained court approval. The defense made an offer of proof with respect to DeForest.

Relying on *Marrone v. State*,[1] the trial court ruled that the defense had not established a strong enough evidentiary foundation to single out DeForest as a suspect in the crimes, although the defense was free to impeach DeForest's testimony and to introduce any evidence that was independently relevant outside of its tendency to implicate DeForest.

The jury found Smithart guilty on all counts. A divided court of appeals affirmed the convictions, holding that the trial court's *Marrone* ruling was too narrow but that the error was harmless beyond a reasonable doubt.[2] Smithart appeals.

## III. STANDARD OF REVIEW

■ This court reviews a trial court's evidentiary rulings for abuse of discretion.[3] We review de novo questions of law presented by the court's evidentiary rulings.[4] On questions of law, our duty is "to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5] If the trial court erred in its evidentiary rulings and in so doing affected the defendant's constitutional rights, we must reverse the conviction unless all errors were harmless beyond a reasonable doubt.[6]

## IV. DISCUSSION

### A. The Superior Court Erred by Refusing to Allow Smithart to Present Evidence and Argument that DeForest Killed M.L.

■ Smithart argues that the trial court abused its discretion and violated his due process rights when it excluded the evidence and argument that Smithart offered to support his defense that David DeForest, not Smithart, kidnapped, raped, and murdered M.L. We agree.

■ Although it is not absolute,[7] a defendant's right to present a defense is a fundamental element of due process. When a trial court's evidentiary rulings substantially infringe upon the right to present a defense, the court necessarily violates the defendant's due process rights.[8]

■ Under Alaska law, a defendant may always generally suggest that someone other than the defendant is guilty of the charged crime. But when a defendant wishes to implicate a specific individual, evidence of the third party's guilt is admissible only if the defense can produce evidence that "tend[s] to directly connect such other person with the actual commission of the crime charged."[9] This rule derives from considerations of relevance and materiality; as we explained in *Marrone v. State*,[10] such an initial evidentiary showing is necessary because "if evidence of motive alone upon the part of other persons were admissible ... in a case involving the killing of a man who had led an active and aggressive life it might easily be possible for the defendant to produce evidence tending to show that hundreds of other persons" were

1. 359 P.2d 969 (Alaska 1961).

2. *See Smithart v. State*, 946 P.2d 1264, 1279–89 (Alaska App.1997).

3. *See M.R.S. v. State*, 897 P.2d 63, 66 (Alaska 1995).

4. *See id.*

5. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

6. *See Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *partially overruled by Brecht v. Abrahamson*, 507 U.S. 619, 630–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that the "harmless beyond a reasonable doubt" analysis is inapplicable in habeas cases); *Evans v. State*, 550 P.2d 830, 840 (Alaska 1976).

7. *Cf. Larson v. State*, 656 P.2d 571, 574–75 (Alaska App.1982) (noting that a defendant's right to present evidence in his or her defense is properly limited by considerations of relevance and the balancing test in Alaska Rule of Evidence 403).

8. *See Keith v. State*, 612 P.2d 977, 982–83 (Alaska 1980) (citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)).

9. *Marrone v. State*, 359 P.2d 969, 984–85 n. 19 (Alaska 1961) (quoting *People v. Perkins*, 59 P.2d 1069, 1074 (Cal.App.1936)).

10. 359 P.2d 969 (Alaska 1961).

possible suspects in the murder.[11] In such a system, the resulting trial would be a confusing waste of judicial resources.[12] The concerns voiced in *Marrone* have led virtually every state to require some kind of preliminary evidentiary showing before allowing introduction of alternative-perpetrator evidence.[13]

But the trial court here viewed the direct-link requirement too narrowly. Smithart presented numerous direct connections between DeForest and the crimes against M.L. In Smithart's pretrial *Marrone* offer of proof, he stated that the defense could prove: that DeForest was at the scene of M.L.'s disappearance; that the shop in which DeForest worked was a plausible source of the various paint chips and metal fragments found on or near M.L.'s body; that DeForest delayed in coming forward with his identification of Smithart on Tazlina Terrace Drive; that DeForest presented false evidence and lied to the police about his own whereabouts on the afternoon of M.L.'s disappearance; that DeForest was a convicted felon who illegally possessed firearms in violation of his probation, including firearms similar to that used to shoot M.L.; and that DeForest had previously been accused of sexual abuse of a minor for a consensual affair with a fifteen-year-old girl.

Nevertheless, the trial court decided that Smithart's offer of proof did not satisfy the dictates of *Marrone*. The court explained that although DeForest was "a person who worked in an area where there was grease and paint of multiple colors," the defense made "[n]o apparent showing that would connect him directly with the victim ... other than the kinds of things that could apply potentially to a number of people in the Glennallen area."

Based upon his ruling that Smithart's offer of proof did not satisfy *Marrone*, the trial judge completely excluded two types of evidence and argument regarding DeForest. First, Judge Anderson ruled that Smithart could not suggest to the jury in opening statement or closing argument that DeForest was guilty of the crime. Second, the defense wanted to show pictures of the shop where DeForest worked and discuss its machinery and the colors of paint found there in order to establish that the metal fragments and paint chips found on or near M.L.'s body could be traced to DeForest. But the court excluded this evidence regarding the contents of the shop.

The State argues that because the evidence contained in the offer of proof linking DeForest to the crime was speculative and in part relied on character evidence, it did not satisfy *Marrone*. But the State's view of *Marrone* is too narrow. Post-*Marrone* Alaska cases imply that other-suspect evidence is admissible if it links the crime to the third party in a way that tends to create doubt about the defendant's guilt.[14]

In *Garner v. State*,[15] Garner was on trial for the murder of his stepson Justin by child abuse; he wanted to present evidence that a neighbor, J.H., killed the child. The trial court refused to allow the defendant to introduce evidence of J.H.'s prior abuse of her own children.[16] The court of appeals reversed Garner's manslaughter conviction, holding that the trial court should have admitted alternative-perpetrator evidence under *Marrone*, notwithstanding that the evidence against J.H. was quite weak—she had no motive to kill Justin and the evidence against her was prior-bad-acts evidence, which is generally disfavored.[17] Because J.H. had the opportunity to commit the crime and had abused children in the past, the court of appeals reasoned that a jury could

---

11. *Id.* at 984–85 n. 19 (quoting *Perkins,* 59 P.2d at 1074–75).

12. *See id.* (citing *Perkins,* 59 P.2d at 1075).

13. *See* 40A Am.Jur.2d *Homicide* § 286 (1999).

14. *See Garner v. State,* 711 P.2d 1191, 1193–94 (Alaska App.1986); *James v. State,* 671 P.2d 885, 892–94 (Alaska App.1983).

15. 711 P.2d 1191 (Alaska App.1986).

16. *See id.* at 1193–94.

17. *See id.* at 1193–95.

reasonably infer that she had abused Justin as well, an inference that could easily lead a jury to conclude that there existed a reasonable doubt about Garner's guilt.[18] And because identity was the central issue in the case, the trial court's refusal to admit the evidence implicated Garner's right to fully present his defense.[19] Thus, such evidence is admissible as long as it tends to create a reasonable doubt as to the defendant's guilt.[20]

Courts applying *Marrone* and analogous rules have similarly focused upon whether the evidence offered tends to create a reasonable doubt as to the *defendant*'s guilt, not whether it establishes the guilt of the *third party* beyond a reasonable doubt.[21] One court construing *Marrone* explained that the crucial issue is whether other-suspect evidence calls the defendant's guilt into question:

> There is no requirement that the proffered evidence must prove or even raise a strong probability that [the third party] committed the offense. Rather, the evidence need only tend to create a reasonable doubt that the defendant committed the offense.... [O]ur focus is on the effect the evidence has upon the defendant's culpability and not the third party's culpability.[22]

■ Indeed, the State's brief cites several cases as examples of "the proper application of the *Marrone* rule" that make clear that

the purpose of the evidence is not to prove the other person's guilt but to generate a reasonable doubt as to the guilt of the defendant.[23] Yet here the trial court's *Marrone* ruling focused not on whether the proffered evidence created a reasonable doubt as to Smithart's guilt but rather upon whether it sufficiently implicated DeForest. This ruling was therefore erroneous.

Courts generally agree that opportunity alone is an insufficient basis on which to admit alternative-perpetrator evidence [24] and may exclude such evidence as too speculative. Cases in which other-suspect evidence has been properly excluded have typically involved very attenuated evidence; for example, evidence that the third party coached at the victim's school and drove a small car when a small car was heard at the crime scene [25] or evidence that the third party knew the victim and drank a particular brand of beer when a can of that beer was found at the crime scene.[26] In contrast, Smithart's offer of proof combined opportunity, consciousness of guilt, and forensic evidence against DeForest.

Moreover, DeForest was a key prosecution witness. Several courts have noted that defendants should be given broader latitude to admit other-suspect evidence against witnesses who testify against them at trial, noting that "where the third person is a state's witness with a possible motive to convict the defendant to save himself, the rule admitting

---

18. *See id.* at 1194–95.

19. *See id.* at 1193–95.

20. We agree with the State that *Garner* does not compel reversal here, both because Garner and J.H. were the only two people who could have killed Jason, whereas there is no showing here that either Smithart or DeForest must be the perpetrator, and because much of the evidence Smithart wished to introduce was ultimately heard at trial. But *Garner* illustrates the reasons that the trial court's *Marrone* ruling was too narrow.

21. *See Nelson v. U.S.*, 649 A.2d 301, 305 (D.C.App.1994); *State v. Harris*, 560 N.W.2d 672, 679 (Minn.1997) (citing *Marrone*); *State v. Hawkins*, 260 N.W.2d 150, 158–59 (Minn.1977) (citing *Marrone*); *State v. Koedatich*, 112 N.J. 225, 548 A.2d 939, 976–79 (1988). *See also generally* 40A Am.Jur.2d *Homicide* § 286 (1999).

22. *Johnson v. U.S.*, 552 A.2d 513, 517 (D.C.App. 1989) (emphases omitted).

23. The State, for example, cites *Harris*, 560 N.W.2d at 679–80, *Hawkins*, 260 N.W.2d at 158, and *Koedatich*, 548 A.2d at 976–79 in support of its argument that the trial court properly applied *Marrone* to the facts of this case. These cases, however, focus on whether other-suspect evidence creates a reasonable doubt as to the defendant's guilt.

24. *See, e.g., Nelson v. U.S.*, 649 A.2d 301, 305 (D.C.App.1994) (holding "suspicion engendered by mere opportunity ... insufficient to create the requisite link to the offense").

25. *See State v. Koedatich*, 112 N.J. 225, 548 A.2d 939, 980–81 (1988).

26. *See People v. Whalen*, 158 Ill.2d 415, 199 Ill.Dec. 672, 634 N.E.2d 725, 733 (1994).

otherwise competent evidence of a third person's guilt is especially applicable." [27] Accordingly, Smithart should have been able to present direct evidence against DeForest.

 Finally, we agree with the court of appeals's conclusion that the trial court misconstrued *Marrone* when it prevented Smithart's attorney from arguing that DeForest was guilty.[28] Nothing in *Marrone* limits an attorney from using an opening statement or closing summation to draw reasonable inferences about a third party's involvement from trial evidence. The court of appeals correctly explained that, under *Marrone*, Smithart should have been able to argue to the jury that DeForest was guilty of the charged crimes:

> [T]he *Marrone* rule limits the introduction of evidence, but it does not limit a party's ability to argue all reasonable inferences from the evidence that is admitted. If, despite *Marrone*'s restriction on the introduction of independent evidence that DeForest committed the crime, it was clear that sufficient evidence would be introduced at Smithart's trial to warrant a reasonable inference that DeForest might be the perpetrator, then Smithart would be entitled to announce this inference in his opening statement.[29]

Thus, the trial court's restriction on argument was an abuse of discretion.

B. *The Trial Court's Errors Were Not Harmless Beyond a Reasonable Doubt.*

 The question remains whether the trial court's errors in limiting Smithart's evidence and argument were harmless beyond a reasonable doubt.[30] In determining whether errors are harmless beyond a reasonable doubt, the question is whether there is a reasonable possibility that the error affected the result.[31] The State here argues and the court of appeals concluded that any errors were harmless beyond a reasonable doubt.[32] We disagree.

The court of appeals concluded that the trial court's *Marrone* errors were harmless, noting in its analysis its belief that the trial court altered its *Marrone* ruling prior to closing arguments in the case.[33] Before summations, Judge Anderson noted that Smithart's attorney could "make arguments about [witnesses] from a bias standpoint ... which may well get into the same thing" as an argument that the witness was guilty. The court of appeals interpreted this statement to mean that the trial court may have revised its *Marrone* ruling to allow Smithart to name DeForest as a suspect in Smithart's closing.[34] But the record suggests otherwise. Prior to making his summation, defense counsel summarized the court's ruling as mandating that Smithart's closing argument "can't refer to a particular person who may have done it, but that there was a world of other suspects out there." Had the court intended to alter the scope of allowable argument under *Marrone*, it would have corrected Smithart's counsel at this point. And regardless of the trial court's intent, it did not clearly communicate to the parties any change in the scope of its *Marrone* ruling, as both the prosecutor and the defense believed that the court's ruling precluded mention of specific other suspects. In compliance with this understanding of the trial court's ruling, Smithart did not directly accuse DeForest

**27.** *Hawkins,* 260 N.W.2d at 158.

**28.** *See Smithart v. State,* 946 P.2d 1264, 1279, 1281, 1289 (Alaska App.1997).

**29.** *Id.* at 1281.

**30.** *See Kitchens v. State,* 898 P.2d 443, 451 (Alaska App.1995), in which the court of appeals "assume[d]," without deciding, that the constitutional standard of review applied "given the significance and constitutional dimension of the accused's right to present favorable evidence." The State agrees that we must determine whether, "if the trial court abused its discretion in

ruling that Smithart failed to satisfy *Marrone's* foundational requirement, the error was harmless beyond a reasonable doubt." Thus, we accept this as the proper harmless error analysis for this case.

**31.** *Hazelwood v. State,* 962 P.2d 196, 198 (Alaska App.1998) (citations omitted).

**32.** *See Smithart,* 946 P.2d at 1289.

**33.** *See id.* at 1287–89.

**34.** *See id.* at 1287.

during closing arguments. Accordingly, we review for harmlessness the trial court's original *Marrone* ruling, which prohibited evidence and argument to the jury that DeForest killed M.L.

 The State argues that because Smithart was ultimately able to present much of the evidence detailed in his offer of proof, the court's erroneous *Marrone* ruling was harmless beyond a reasonable doubt. The State claims that the two items of evidence that were never presented to the jury—the fact that DeForest's shop was a possible source of the metal fragments and paint chips found on or near M.L.'s body and the fact that he had previously been investigated for sexual abuse of a minor—were inadmissible regardless of *Marrone*. We agree that evidence of DeForest's involvement with a fifteen-year-old girl was inadmissible[35] but hold that the trial court should have admitted evidence of the contents of DeForest's shop.

The State's case against Smithart relied heavily upon circumstantial evidence, forensics in particular. The prosecution focused upon the various fibers, paint chips, and metal fragments found on or near the victim. The source of this trace evidence was highly contested at trial, with the State offering evidence that it could be traced to Smithart and the defense disputing that conclusion. Smithart wanted to show the jury pictures of DeForest's shop and to discuss the metals and colors of paint found there to establish that DeForest was a possible source of the metal fragments and paint chips found at the crime scene. In particular, Smithart sought to connect DeForest with a set of orange paint chips found on M.L. by showing that the floor of DeForest's shop was painted orange and that the paint was peeling. Yet the superior court did not allow Smithart to

present testimony about DeForest's orange floor or to show the jury photographs of the floor.

The State argues that evidence of the paint in the shop was not relevant because it was too speculative. In excluding the paint evidence, the trial court relied on the fact that Smithart did not conduct any independent forensic testing to determine if the orange paint from DeForest's workshop actually matched the chips found at the crime scene and characterized the evidence as irrelevant because it was merely "similar but not necessarily matching types of forensics."

But as Smithart's attorney noted, the defense has no responsibility to produce affirmative evidence of an alternative perpetrator's guilt through independent forensic testing or any other means. Rather, the defense need only create a reasonable doubt as to the defendant's guilt. Indeed, one court has cautioned that requiring alternative-perpetrator evidence to link clearly the third party to the crime may place "too high a burden on a criminal defendant who is without the vast investigatory resources of the State."[36] We conclude that the orange paint evidence is relevant because it tends to create a reasonable doubt as to Smithart's guilt; we also conclude that the defense should not be required to conduct expensive tests on the paint evidence in order to present it to the jury. Thus, the trial court's refusal to admit evidence of the contents of DeForest's workshop was error.

 The State maintains that, even if the trial court's *Marrone* ruling was in error, Smithart's presentation of his case did not suffer. We disagree. The State correctly notes that the defense conducted a lengthy cross-examination of DeForest, which elicited some of the information it had sought to introduce in its *Marrone* offer of proof. But

---

35. Smithart offered to show that DeForest was accused of sexual abuse of a minor for a consensual affair with a fifteen-year-old girl in 1990. Although the girl's mother filed a complaint with the police, no charges were brought against DeForest. The girl denied the affair, but Smithart was prepared to introduce her diary to show that a sexual relationship existed between the two. The State argues that this evidence is irrelevant and also constitutes impermissible propensity evidence under Alaska Evidence Rule 404. We

agree. ARE 404(b)(1) provides that evidence of past bad acts is not admissible to prove that "the person acted in conformity" with a trait of character. A consensual affair with a fifteen-year-old, even if proven, is not probative of any disputed issues in the case.

36. *State v. Robinson*, 628 A.2d 664, 666–67 (Me. 1993).

the defense was unable to cross-examine De-Forest about the paint and metal fragments present in his workshop or to ask DeForest directly whether he committed the crimes for which Smithart was being tried. We believe that these limitations hampered Smithart's ability to defend himself.

Moreover, Alaska courts have in the past refused to equate evidence elicited on cross-examination with directly presented evidence. In *Garner v. State*,[37] the trial court refused to allow direct evidence of J.H.'s prior abuse of her own children, although Garner was allowed to cross-examine the police officers who investigated child abuse complaints against J.H.[38] The court of appeals held that the trial court should have admitted the evidence of prior abuse by J.H. and rejected the State's claim that, because the defense was able to cross-examine witnesses, the trial court's refusal to admit other-suspect evidence was harmless beyond a reasonable doubt.[39] The court of appeals believed that the inability of the defense to present direct evidence diluted the effectiveness of the defendant's case.[40] Similarly, in this case the trial court's allowance of cross-examination did not remedy the court's fundamental error—its significant interference with Smithart's right to present and direct his own defense.

▮ Finally, the trial court's limitation on Smithart's ability to argue to the jury that DeForest committed the crimes could have contributed to Smithart's conviction. The State argues that Smithart devoted a substantial portion of his summation to the inconsistencies in DeForest's various statements to the police. Indeed, Smithart ultimately asked the jury to disregard DeForest's testimony because DeForest was "a gratuitous liar." But given that DeForest was the only witness at trial who testified to seeing Smithart in the area of M.L.'s disap-

pearance at the time she was kidnapped, the jury may well have perceived these actions as attempts to discredit DeForest's testimony as a witness rather than to implicate him as the perpetrator of the crime.

▮ Moreover, we agree with Judge Coats's dissent that the ruling, which prevented the defense from directly presenting its theory of DeForest's guilt to the jury in its opening statement and summation, robbed Smithart's case of its cohesion and narrative force and impaired his right to present his own defense.[41] Defendants are "entitled to present [their] version of the events and the evidence supporting it in as full a manner as possible."[42] Due to the limitations on his ability to present direct arguments to the jury and present evidence, Smithart was "unable to assemble the circumstantial evidence which suggested that DeForest could have committed the crime into an argument which might have made sense to the jury."[43] At least one case has explicitly relied upon the defendant's ability to use closing argument to "clearly and repeatedly propose[ ] that [the third party], not defendant" was guilty as a pivotal factor in determining whether a *Marrone* exclusion error was harmless.[44] Because Smithart could not present a structured and coherent defense aimed at establishing that DeForest committed the crimes, and because a reasonable possibility exists that this exclusion of evidence and argument contributed to Smithart's conviction, the trial court's error was not harmless beyond a reasonable doubt.

## V. CONCLUSION

Because the right to argue in one's own defense is a fundamental component of the right to a fair criminal trial and because the trial court's erroneous *Marrone* ruling was

---

37. 711 P.2d 1191 (Alaska App.1986).

38. *See id.* at 1193–94.

39. *See id.* at 1195.

40. *See id.*

41. *See Smithart,* 946 P.2d at 1290 (Coats, J., dissenting).

42. *Garner,* 711 P.2d at 1194 (quoting *Keith v. State,* 612 P.2d 977, 984 (Alaska 1980)).

43. *Smithart,* 946 P.2d at 1290 (Coats, J., dissenting).

44. *People v. Hall,* 41 Cal.3d 826, 226 Cal.Rptr. 112, 718 P.2d 99, 105 (1986).

not harmless beyond a reasonable doubt, we REVERSE and REMAND for a new trial.

BRYNER, Justice, not participating.