STATE RIGHT-OF-WAY (IF BECHAROF VACATION EFFECTIVE)

ILLUSTRATION 1

APPENDIX C

Henry T. NICHOLIA, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7660.

Court of Appeals of Alaska.

Oct. 12, 2001.

Gary L. Stapp, Fairbanks, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Henry T. Nicholia was accused of committing a burglary and a sexual assault in June 1998. At Nicholia's trial, the primary issue was the identity of the burglar/rapist. To prove that Nicholia was the culprit, the State offered evidence of two prior sexual assaults committed by Nicholia, one in 1990 and the other in 1992. The trial judge concluded that Nicholia's conduct during these prior assaults was sufficiently distinctive, and sufficiently similar to the conduct of the rapist in the current case, that evidence of these prior assaults was admissible under Evidence Rule 404(b)(1) to prove that Nicholia was the perpetrator of the current sexual assault. On appeal, Nicholia challenges the trial judge's ruling.

We conclude that evidence of the 1992 assault was properly admitted under Rule

404(b)(1), but evidence of the 1990 assault should have been excluded from Nicholia's trial. Nevertheless, we conclude that this error did not affect the jury's decision, and we therefore affirm Nicholia's convictions.

### The facts of the current case

D.N., a single Native woman, was raped in the village of Tanana in the early morning hours of June 30, 1998. She identified her assailant as Henry Nicholia. Nicholia is D.N.'s first cousin; they have known each other all their lives.

The night before, D.N. had bumped into Nicholia while walking home from work. D.N. invited Nicholia to come back with her to the home of April Folger, where she was house-sitting. Nicholia helped D .N. with some cleaning, and then the two of them drank wine and talked.

After about two hours, D.N. told Nicholia that she had to go to bed. Nicholia asked if he could sleep on the couch, but D.N. said no, because it was not her house. Nicholia left at about 1:00 a.m. without argument. D.N. locked up the house and went to bed.

D.N. awoke around 5:30 a.m. when she heard a noise inside the house. A few moments later, Nicholia appeared in the bedroom doorway. He rapidly approached the bed and pinned D.N. face down, covering her head with a pillow. Nicholia then removed D.N.'s clothes and raped her.

When Nicholia finished, he climbed off of D.N., threw her clothes at her, and called her a "worthless bitch". He then went into another room and apparently fixed himself a drink. Meanwhile, D.N. was hiding under a sleeping bag. Nicholia returned to the bedroom, kicked her, and called her a "fucking bitch" and a "worthless bitch".

Nicholia left the room once more, and D.N. hurriedly dressed herself. When Nicholia returned to the bedroom again, the cousins struggled briefly. Then Nicholia left the room a third time. D.N. seized this opportunity to jump out of a window and run to the nearby home of a village police officer, where she reported the rape.

Although D.N. unhesitatingly identified Nicholia as her assailant, the State was un-able to produce physical evidence linking Nicholia to the rape—no DNA, no hair, no fibers. At trial, Nicholia's attorney relied on this lack of physical evidence to argue that the State had failed to meet its burden of proving beyond a reasonable doubt that Nicholia was D.N.'s attacker. The defense presented an expert witness who explained how D.N., traumatized by the assault, might be honestly mistaken when she identified Nicholia as her attacker.

To bolster D.N.'s identification of Nicholia, the State introduced evidence of two prior sexual assaults perpetrated by Nicholia.

### The 1990 sexual assault

Fifteen-year-old H.E. was in Fairbanks attending the 1990 World Eskimo Indian Olympics. Her cousin, Edward E., was competing in the games and was staying with his girlfriend in a University of Alaska dormitory. After a night of partying, H.E. asked Edward if she could go to sleep in his dormitory room. Edward agreed.

At around 8:00 a.m., the building's fire alarm went off. H.E. slept through the alarm. Edward left the room and went outside, but he did not rouse H.E. because he was pretty sure that it was a false alarm. When Edward left the room, he closed the door but did not lock it.

As Edward was headed outside, he spied Nicholia in the hallway. Nicholia appeared to have been drinking.

Edward and his girlfriend came back to the room some 30 minutes later, after University officials told everyone that there was no fire and that it was safe to re-enter the dormitory. But when they tried to enter the room, they found the door locked. When Edward knocked on the door, he heard Nicholia's voice telling him to go away. Edward continued to demand entry, and Nicholia eventually opened the door. Edward saw that Nicholia's belt buckle was undone. Nicholia left the room, but he hung around the dormitory.

As soon as Nicholia was gone, H.E. told Edward that Nicholia had sexually assaulted her. According to H.E., she awakened to

find that her clothes had been removed; Nicholia was on top of her, engaging in sexual intercourse with her. Nicholia stopped and climbed off H.E. when Edward knocked on the door.

H.E. is an Alaska Native. She was born in Tanana and raised in Galena. She knew who Nicholia was because she had met him about one year before. However, H.E. chose not to pursue criminal charges because she did not want to endure a court proceeding.

### The 1992 assault

L.L., a 26–year–old Alaska Native woman, testified that Nicholia broke into her house and sexually assaulted her. This incident occurred in Tanana in 1992. L.L. awoke around 5:00 a.m. to find Nicholia kneeling at the side of her bed. Nicholia pushed a pillow onto L.L.'s face and began pulling off her nightgown. Nicholia had been drinking; he smelled of alcoholic beverages.

L.L. had known Nicholia all her life. She vigorously resisted his attack. When L.L. began yelling loudly and hitting Nicholia, he broke off his sexual assault. Nicholia got up and told L.L. that he was leaving. He went into another room and put on his shoes. Then Nicholia asked L.L. if he could use her telephone. Nicholia eventually left the house, but he came back a little later for some cigarettes. As he left L.L.'s home again, Nicholia called L.L. a "fat bitch". (L.L. weighed 104 pounds.)

As a result of this incident, Nicholia was convicted of first-degree burglary and attempted second-degree sexual assault.

### Analysis of these other assaults under Evidence Rule 404(b)(1)

The trial judge admitted evidence of Nicholia's two prior sexual assaults under Evidence Rule 404(b)(1). Rule 404(b)(1) declares that evidence of a defendant's other wrongful acts can not be admitted to establish the defendant's character, but such evidence can be admitted for other purposes. Here, the trial judge ruled that Nicholia's prior sexual assaults tended to prove his

identity as the person who assaulted D.N. in the present case.

The evidence offered by the State (evidence that Nicholia had twice before committed sexual assaults) obviously tended to prove Nicholia's character. That is, the evidence tended to prove Nicholia's propensity for committing sexual assault. If that were the only relevance of this evidence, Rule 404(b)(1) would require its exclusion.

But Rule 404(b)(1) authorizes the admission of evidence of a defendant's other wrongful acts if that evidence tends to prove "identity". The difficulty lies in determining where "character" ends and "identity" begins.

■ In a common-sense way of speaking, Nicholia's character for committing sexual assault tended to prove his identity as D.N.'s assailant. If Nicholia is disposed to commit rape, this fact makes it more likely that he is the person who sexually assaulted D.N.. But Evidence Rule 404(b)(1) categorically bars this inference and this theory of admissibility. Evidence of a defendant's other sexual assaults can not be admitted to prove "identity" unless that evidence establishes more than simply the defendant's propensity to engage in sexual assault. As our supreme court explained in *Coleman v. State*, 621 P.2d 869 (Alaska 1980), the question is whether the defendant's prior sexual assaults are so distinctive that, aside from showing the defendant's bad character, they independently tend to establish the defendant's identity as the perpetrator of the crime being litigated.[1]

In *Coleman*, the supreme court did not insist that the defendant's prior crimes be so distinctive as to represent his "signature"— so distinctive as to practically identify the defendant from among all other potential culprits. Rather, the court asked whether, under the totality of circumstances, the other sexual assaults bore a striking enough similarity to the crime being litigated that they took on a probative aspect above and beyond

---

**1.** *See id.* at 875. Also, see our extended discussion of this point in *Smithart v. State*, 946 P.2d 1264, 1272 (Alaska App.1997), *rev'd on other grounds*, 988 P.2d 583 (Alaska 1999).

the fact that the defendant might be a repeat rapist.[2]

Nicholia's 1992 assault on L.L. meets this test. L.L., like D.N., was a young Native woman who had known Nicholia all her life. L.L. testified that Nicholia had been drinking. Nicholia was drinking with D.N. just hours before she was assaulted. Nicholia broke into L.L.'s house in the early morning, came into her bedroom, and used a pillow to cover her face before he began removing her clothes. These facts match the conduct of D.N.'s assailant. L.L. lived alone with her two-year-old son, and after Nicholia ended his attack, he hung around her house for a time. D.N. likewise had no other adults living with her, and her assailant engaged in similar behavior—hanging around the house after the assault was over. Finally, before Nicholia left L.L.'s house, he called her a "fat bitch". D.N.'s assailant used similar language, calling her a "worthless bitch" and a "fucking bitch".

Given these similarities between Nicholia's 1992 assault on L.L. and the facts of the current case, we uphold the trial judge's decision to allow the State to introduce evidence of the 1992 assault.

We reach a different conclusion, however, with respect to Nicholia's 1990 assault on H.E.. The assault on H.E. contains certain similarities to the assault on D.N.: both victims were young Native women, and both were attacked while they were sleeping. In addition, Nicholia had been drinking before both assaults. But H.E. was not living alone; rather, she was temporarily left alone because of the fire alarm. (Her cousin and his girlfriend returned to the room within 30 minutes.) H.E. was not attacked in the middle of the night; rather, Nicholia assaulted her between 8:00 and 8:30 in the morning, at a time when other people were awake and engaged in daily activities in the near vicinity. Moreover, Nicholia did not use a pillow to subdue H.E., nor did he call her names,

nor did he linger in her presence following the assault.

Given these significant differences between Nicholia's 1990 assault on H.E. and the facts of the current case, we conclude that the trial judge abused her discretion when she allowed the State to introduce evidence of the 1990 assault. The 1990 assault was relevant, but only because it tended to establish Nicholia's propensity to commit rape. The evidence was therefore barred by Rule 404(b)(1).

*Does this error require reversal of Nicholia's convictions?*

The State's evidence of Nicholia's 1992 assault on L.L. was properly admitted, but the State's evidence of Nicholia's 1990 assault on H.E. should have been excluded. The remaining question is whether Nicholia's convictions for burglary and sexual assault should be reversed because the jury improperly heard evidence of the 1990 assault.

This court faced a similar problem in *Lerchenstein v. State*, 697 P.2d 312 (Alaska App. 1985). Lerchenstein was charged with murder and three counts of assault arising from an encounter at a service station in which he threatened several people with a handgun and ultimately shot and killed one of them.[3] At Lerchenstein's trial, the State introduced evidence of Lerchenstein's aggressive and erratic behavior on various occasions during the two days leading up to the shooting.[4] This court concluded that some of this evidence was admissible for non-propensity purposes, but the remainder should have been excluded under Evidence Rule 404(b) (now renumbered as Evidence Rule 404(b)(1)).[5] We then had to decide whether the error in admitting this portion of the evidence required reversal of Lerchenstein's convictions.

We ultimately concluded that the evidentiary error did require reversal of Lerchenstein's convictions.[6] We rested this conclusion primarily on the fact that, among the State's evidence of Lerchenstein's various

---

2. *See Coleman,* 621 P.2d at 875.

3. *See id.* at 313–14.

4. *See id.* at 314–15.

5. *See id.* at 318.

6. *See id.* at 319.

wrongful acts, the improperly admitted evidence carried the most potential for unfair prejudice.[7] We acknowledged that the trial judge instructed the jurors regarding the limited purpose for which the evidence could be used, specifically cautioning the jurors not to view the evidence as proof of Lerchenstein's general propensity for threatening or assaultive behavior.[8] Normally, such a cautionary instruction is presumed to be effective in deterring a jury from improper consideration of evidence.[9] But in Lerchenstein's case, the improperly admitted evidence went directly to the major disputed issue in the case, and its potential for unfair prejudice far outweighed its non-propensity probative value. Given these circumstances, we concluded that we could not be sure that the jurors had obeyed the judge's cautionary instruction.[10]

We now apply a similar analysis to Nicholia's case.

■ First, we note that the trial judge gave the jurors a detailed cautionary instruction regarding proper and improper uses of the evidence of Nicholia's prior sexual assaults. The judge told the jurors that this evidence could not be considered for the purpose of proving that Nicholia "[was a person] of bad character" or that he "[had] a disposition to commit crimes." Instead, the judge said, the jurors could consider this evidence "only for the limited purpose of determining if it tends to show a characteristic method, plan or scheme in the commission of criminal acts similar to the method, plan or scheme used in the commission of the offense in this case", thus potentially "show[ing] the identity of the person who committed the crime ... of which the defendant is accused." The judge flatly told the jurors that they "[were] not permitted to consider [this] evidence for any other purpose."

Second, we note that, unlike the situation in *Lerchenstein*, the improperly admitted evidence (the evidence of Nicholia's 1990 assault on H.E.) was not the evidence that most undercut Nicholia's defense. Rather, the State's evidence of Nicholia's 1992 assault on L.L. was the more powerful evidence of Nicholia's identity as D.N.'s assailant—because, as we explained above, Nicholia's behavior during that 1992 assault was so similar to the behavior of the person who attacked D.N.. The evidence of Nicholia's assault on H.E. contributed less to the prosecution's case for precisely the same reasons that it should not have been admitted: because the assault on H.E. differed in several important respects from the attack on D.N..

In fact, during her summation to the jury, Nicholia's attorney focused on the many differences between the assault on H.E. and the assault on D.N.. After enumerating these differences, the defense attorney then reminded the jurors of the trial judge's cautionary instruction: unless they found the two assaults so similar as to reveal a common plan or scheme, they were barred from using the evidence of Nicholia's assault on H.E. for any purpose.

Third, Nicholia's defense of mistaken identity was colorable but not strong. As already described, Nicholia did not take the stand to deny the assault, but he presented the testimony of an expert witness who explained how the victim of an assault or other traumatic event might make a mistake when identifying their attacker. In a case where the victim did not know their attacker, this testimony could conceivably lead to an acquittal. But D.N. had known Nicholia all her life. Moreover, D.N. had ample opportunity to observe her attacker both during the sexual assault and afterward. As explained above, D.N. testified that Nicholia remained in her house (or, rather, April Folger's house) for a long time after the rape ended. He went into another room, fixed himself a drink, then came back to the bedroom to kick D.N. and yell at her. Following this renewed assault, Nicholia left D.N. alone, but he did not leave the house. After D.N. dressed herself, Nicholia returned to the

---

**7.** *See id.* at 318–19.

**8.** *See id.* at 318.

**9.** *See id.* at 318; *Roth v. State,* 626 P.2d 583, 585 (Alaska App.1981).

**10.** *See Lerchenstein,* 697 P.2d at 319.

bedroom, and the two cousins struggled again, face to face.

Given D.N.'s life-long acquaintance with Nicholia and her repeated opportunities to observe him during and after the assault, and given L.L.'s testimony describing a strikingly similar sexual assault committed by Nicholia, we conclude that the testimony about the assault on H.E. did not substantially alter the strength of the State's case.

We acknowledge that evidence of a defendant's other crimes can pose a high risk of unfair verdicts. Knowing that a defendant has committed other crimes, jurors may be tempted to convict the defendant for past deeds rather than insisting that the State prove its present charges beyond a reasonable doubt. We do not intend to downplay that risk. But in Nicholia's case, we conclude that the improper evidence did not appreciably affect the jury's verdicts.[11] The jurors *properly* heard evidence of Nicholia's

1992 assault on L.L.—evidence that was more damaging to Nicholia's defense than the improperly admitted evidence concerning the 1990 assault on H.E.. And the trial judge expressly instructed the jurors to disregard the assault on H.E. if it did not bear sufficient similarity to the assault on D.N. in the present case. Under these circumstances, we conclude that the admission of the evidence concerning Nicholia's assault on H.E. was harmless error.

*Conclusion*

The judgement of the superior court is AFFIRMED.

---

**11.** *See Love v. State,* 457 P.2d 622, 632 (Alaska 1969) (in cases of non-constitutional error, the test for reversal is whether the error "appreciably affect[ed] the jury's verdict").