[Cite as *State v. Farthing*, 2020-Ohio-4936.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| STEVEN FARTHING | : | Case No. 2019 CA 00049 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 18 CR 00463

JUDGMENT:     Affirmed

DATE OF JUDGMENT:     October 14, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

THOMAS S. LININGER                 RYAN SHEPLER
239 West Main Street                    158 East Main Street
Suite 101                                      P.O. Box 388
Lancaster, OH  43130                    Logan, OH  43138

*Wise, Earle, J.*

{¶ 1}  Defendant-Appellant, Steven Farthing, appeals his October 28, 2019 convictions in the Court of Common Pleas of Fairfield County, Ohio.  Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On September 20, 2018, the Fairfield County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02 and two counts of gross sexual imposition in violation of R.C. 2907.05.  Said charges arose from an incident involving a minor, A.L.W.  Appellant was also indicted on two additional counts of gross sexual imposition and one count of corrupting another with drugs in violation of R.C. 2925.02 in relation to A.L.W.'s older sister, also a minor, R.M.W.  Mother of the children is S.B.  Appellant is the brother of S.B., and he and his wife, S.F., cared for the children because his sister was unable to do so.

{¶ 3}  On April 18, 2019, a superseding indictment was filed removing all allegation as to A.L.W., and charging appellant with one count of rape, two counts of gross sexual imposition, and one count of corrupting another with drugs as to R.M.W.

{¶ 4}  A jury trial commenced on September 17, 2019.  The jury found appellant guilty as charged.  By judgment entry filed October 28, 2019, the trial court sentenced appellant to an aggregate term of fifteen years to life in prison.

{¶ 5}  Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 6}  "THE TRIAL COURT ERRED BY EXCLUDING EVIDENCE OF AN ALTERNATE PERPETRATOR OF RAPE."

II

{¶ 7} "THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

III

{¶ 8} "THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I

{¶ 9} In his first assignment of error, appellant claims the trial court erred by excluding evidence of an alternate perpetrator of the rape. We disagree.

{¶ 10} On March 22, 2019, appellant filed a motion in limine to permit admission of sexual abuse allegations involving the mother's boyfriend, H.J., and appellant's minor son, A.F. In support, appellant cited the rape shield law, R.C. 2907.02(D), which states in pertinent part:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶ 11} Appellant acknowledged the statute is intended to prohibit the admission of prior sexual conduct of victims, but argued the aforementioned evidence was "highly relevant and appropriate to establish other possible alleged perpetrators and establish a cohesive narrative surrounding the alleged events in the present case." The evidence would be introduced "to demonstrate the inconsistencies and incoherence of the alleged victims' respective stories."

{¶ 12} Also in support, appellant cited to specific portions of an October 2018 interview by Nationwide Children's Hospital, Child Advocacy Center, of R.M.W.'s sister, A.L.W., wherein she alleged that H.J. had sexually assaulted her. The two children also related incidents of physical abuse between their mother and H.J. Appellant also cited to statements made by appellant and/or his wife that A.F. sexually assaulted R.M.W.

{¶ 13} Appellant argued if the evidence was inadmissible under the rape shield statute, it should be admitted with regard to the gross sexual imposition counts, and the trial court must admit the evidence of prior sexual conduct under Evid.R. 404(B) which states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good

cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 14} A hearing on all pretrial motions was held on August 26, 2019. The hearing consisted of an in camera interview of R.M.W. to determine her competency given her young age, the voir dire examination of Sarah McGee, a child welfare intake caseworker with Franklin County Children Services seeking to quash a subpoena, and argument on the motion in limine. The trial court found R.M.W. competent to testify at trial. August 26, 2019 T. at 22. Ms. McGee testified to conducting an investigation in October 2018 on three separate intakes for sexual abuse, physical abuse, and emotional maltreatment regarding R.M.W. and her sister. *Id.* at 25, 28. This investigation was for new and different allegations than those substantiated in the Fairfield County investigation. *Id.* at 46-48, 50-52. Ms. McGee stated the Franklin County agency spoke with appellant and his wife, the children, and the children's mother, but did not speak with mother's boyfriend, H.J. as he could not be located or contacted. *Id.* at 28, 42. At the conclusion of her investigation, Ms. McGee determined any Franklin County allegations related to sexual abuse of the children by anyone were unsubstantiated. *Id.* at 42. Although an allegation of sexual abuse had been made by A.L.W. involving H.J., she recanted her disclosure. *Id.* at 49-50, 57. Therefore, the sexual abuse by H.J. was unsubstantiated. *Id.* at 50. Ms. McGee's intake regarding oral sex and appellant involved A.L.W., not R.M.W. *Id.* at 54, 59-60. Defense counsel agreed anything involving A.L.W. was not admissible, including her interviews with the Child Advocacy Center. *Id.* at 69-70, 78. It was A.L.W. who mentioned H.J. and then recanted. As for any evidence of sexual abuse by A.F., the trial court concluded the

issue would be one of foundation as a lay witness could not offer opinion testimony without some significant foundation so as not to confuse the issue and mislead the jury. *Id.* at 85. The trial court ordered any issues relating to any allegations involving A.F. could not be inquired into without first conducting a voir dire of the witness to make sure the "witness would have sufficient foundation to answer the question and whether there at that time is any relevancy to it." *Id.* at 85-86. The trial court directed counsel to approach the bench during the trial for discussion and possible voir dire examination of the witness "[o]therwise the Court is not going to permit any testimony or allegations or argument concerning other sexual acts by other individuals." T. at 86. The trial court journalized its decision in an entry filed September 10, 2019, wherein it issued an in limine order directing defense counsel "is not permitted to inquire about any" allegations by A.L.W. against H.J. as they are not relevant to the claims by R.M.W. against appellant.

{¶ 15} On September 13, 2019, appellant filed another motion in limine to permit defense counsel to question the state's witnesses as to alleged conduct of other alleged perpetrators, to wit: H.J. and AF. Appellant argued he had a constitutional right to introduce evidence of third-party guilt.

{¶ 16} In his appellate brief at 16, appellant argues the trial court "repeatedly excluded defense attempts to introduce evidence relating to sexual abuse" by H.J. and A.F., but did not cite to specific portions of the transcript in support. Appellant argues he was denied the right to present evidence of third-party guilt, and the rape shield statute does not explicitly prohibit introduction of prior nonconsensual sexual conduct or evidence of third-party guilt.

{¶ 17} On April 22, 2020, the Supreme Court of Ohio filed its decision in *State v. Jeffries,* --- N.E.3d ---, 2020-Ohio-1539, holding the following at ¶ 30: "We hold that the plain meaning of the term 'sexual activity' as used in the rape-shield law includes both consensual and nonconsensual sexual activity and that both are barred from admission into evidence by the rape-shield law, absent one of the specific exceptions listed in the law." Appellant's arguments do not fall under any of the specific exceptions. Given the holding in *Jeffries,* appellant's arguments as to the rape shield statute lack merit.

{¶ 18} In support of his argument to introduce evidence of third-party guilt, appellant cites the case of *Holmes v. South Carolina,* 547 U.S. 319, 326-327, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006), wherein the United States Supreme Court discussed the use of third-party guilt evidence as follows:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. * * * Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' " * * *
>
> A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that

someone else committed the crime with which they are charged. See, *e.g.,* 41 C.J.S., Homicide § 216, pp. 56–58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am.Jur.2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged .... [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted).  (Citations omitted.)

{¶ 19} In *State v. Walker,* 5th Dist. Stark No. 2005-CA-00286, 2006-Ohio-6240, ¶ 46-48, this court quoted this same language from the *Holmes* case, and further stated at ¶ 49:

> However, "when a defendant wishes to implicate a specific individual, evidence of the third party's guilt is admissible only if the defense can produce evidence that 'tend[s] to directly connect such other person with the actual commission of the crime charged' ".  *Smithart v. Alaska* (1999), 988 P.2d 583, 586.  [Footnotes and citations omitted].

*Accord State v. Benson,* 5th Dist. Guernsey No. 19CA00009, 2020-Ohio-1258.

{¶ 20} In the case at bar, for the evidence that H.J. or A.F. sexually abused R.M.W. to be relevant, there must be a connection between those allegations and the crime charged, thereby casting a reasonable doubt that appellant was the perpetrator.

{¶ 21} Allegations of sexual abuse were first reported in April 2018. R.M.W. never implicated H.J. or A.F. in sexually abusing her. Any allegations against H.J. were made by A.L.W. and then recanted. H.J. was not living with the children at the time of the sexual abuse allegations as the children were living with appellant and his family from July 2017 through the time of the allegations. Any allegations of sexual abuse by A.F. were told secondhand by appellant and/or his wife. August 26, 2019 T. at 79-85.

{¶ 22} Given the fact that the record is devoid of any evidence linking R.M.W.'s sexual abuse allegations to H.J. and/or A.F., we do not find a misapplication of the rules of evidence or a violation of appellant's constitutional rights.

{¶ 23} Assignment of Error I is denied.

II, III

{¶ 24} In his second and third assignments of error, appellant claims the jury's verdict was against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 25} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a

reasonable doubt."  *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 26} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  *See also, State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

{¶ 27} Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b) which states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 28} Appellant was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4) which states:

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶ 29} "Sexual conduct" and "sexual contact" are defined in R.C. 2907.01(A) and (B), respectively:

(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another.  Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

{¶ 30} Lastly, appellant was convicted of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a) which states:

(A) No person shall knowingly do any of the following:

(4) By any means, do any of the following:

(a) Furnish or administer a controlled substance to a juvenile who is at least two years the offender's junior, when the offender knows the age of the juvenile or is reckless in that regard.

{¶ 31} Appellant challenges his convictions on the following two issues: 1) the state failed to appropriately identify appellant as the perpetrator, and 2) the state failed to prove that the victim was not the spouse of appellant. Appellant also argues the lack of physical or corroborating evidence.

{¶ 32} R.M.W. was seven years old at the time of trial. T. at 135. She was asked about knowing someone called "Uncle Steven" and she testified she knew him as being her uncle. T. at 137. She was asked to identify Uncle Steven in court. *Id.* She said his jacket was gray and pointed. T. at 137. The prosecutor clarified the finger-point (T. at 137-138):

Q. Can you tell me - - Do you see people - - Where are you pointing at?

A. In that - -

Q. So that's the defendant's table? Like right here at this table?

A. Uh-uh.

Q. Do you see - - how many people are seated at that table?

A. Three.

Q. Okay. And which one is Uncle Steven? Is he at the last seat, the middle seat or the seat closest to the door?

A. Um, he is right there.

Q. Is he wearing glasses?

A. Um, no.

MS. ELLISON: Can you have the Defendant please look at the witness, Your Honor?

UNIDENTIFIED SPEAKER: I'm sorry.

A. He is wearing glasses.

Q. He's wearing glasses? Okay.

MS. ELLISON: Your Honor, may the record reflect that the witness has identified the Defendant as Steven Farthing?

THE COURT: Yes.

{¶ 33} Defense counsel objected, arguing R.M.W. "clearly pointed to the back of the courtroom twice and then she asks if we can have the Defendant look at her directing her to identify my client." T. at 138. The prosecutor argued appellant "was looking down hiding his face the entire time I was asking about identification." *Id.* The trial court determined the identification was subject to cross-examination and was a weight of the evidence issue. T. at 139.

{¶ 34} Defense counsel did not cross-exam R.M.W. on the issue of identification.

{¶ 35} Based upon the transcript, we find sufficient evidence of identification of appellant as the perpetrator.

{¶ 36} Regarding appellant's argument that the state failed to prove that R.M.W. was not his spouse, again, R.M.W. was seven years old when she testified.  T. at 135. She stated appellant was her uncle.  T. at 137, 168.  R.M.W.'s mother testified appellant was one of her older brothers.  T. at 60.  S.F. testified she was planning on starting divorce proceedings from appellant which would imply that she and appellant were married.  T. at 445.

{¶ 37} Based upon the testimony, we find sufficient evidence was presented to establish that R.M.W. was not the spouse of appellant.

{¶ 38} S.B., the victim's mother and appellant's sister, testified how R.M.W. and her younger child came to be cared for by appellant and his wife in July 2017.  T. at 61-70.  In August 2017, appellant's wife surprised S.B. by formally filing for custody of the children so R.M.W. could be enrolled in school.  T. at 71-74, 105, 107.  In April 2018, R.M.W. told S.B. some things that concerned S.B. enough to call law enforcement and have the child transported to Nationwide Children's Hospital.  T. at 83, 86-90.  The children were returned to S.B.'s custody.  T. at 114-115.

{¶ 39} R.M.W. testified to living with appellant when she was four and five.  T. at 139.  She stated appellant made her touch his private places with her hands, specifically his "winkie."  T. at 144-145.  She then described what happened while she was touching it.  T. at 147-148.  She stated he made her touch his winkie again with her hands and also with her mouth.  T. at 149-150.  Again, she described what happened.  T. at 151-157.  Once, appellant made her smoke from "a little long thing and there is a little hole in the end and there is a big hole, and, um, you put some stuff in it and you light it up with a lighter."  T. at 158.  She did not know what was in the big hole, but her

throat felt like fire.  T. at 159-160.  R.M.W. testified she spoke to two people at the hospital.  T. at 184, 190.

{¶ 40} Carolyn Apple, a pediatric sexual assault nurse examiner at Nationwide Children's Hospital, observed R.M.W.'s interview and physically examined her.  T. at 196-197, 212.  R.M.W. "disclosed that her uncle had her touch his genitals."  T. at 213.

{¶ 41} Jennifer Sherfield, a forensic interviewer at Nationwide Children's Hospital, interviewed R.M.W.  T. at 222, 224.  Portions of the videotaped interview were played to the jury.  T. at 227; State's Exhibits 2 and 3.  R.M.W. related her Uncle Steven wanted help to go potty, so she held his winkie for him in the bathroom.  T. at 234.  It happened one time.  *Id.*  Her description of what happened was nearly identical to her testimony.  T. at 235-236, 241, 243-244.  She also explained the smoking incident.  T. at 236-238.  She stated it happened twice.  T. at 239.  She then related how appellant made her put his hand on his winkie "a long time ago" and that happened in the living room.  T. at 243-244.  Appellant told her not to tell her mommy or anything that goes on in this house or "I would get a whooping and I would lose my bag of gum."  T. at 243.  In a second interview conducted six months later, R.M.W. stated Uncle Steven "put his winkie in my mouth" and that happened "two - - three times."  T. at 283, 287.  Her description of what happened was very similar to her testimony.  T. at 291-293.  She also stated she had to help him go to the bathroom and she had to touch his winkie.  T. at 293-296.  When asked if somebody else ever made her touch their private places, R.M.W. said "[n]o, only Uncle Steven."  T. at 299.

{¶ 42} Kerry Schnirring, a psychology assistant with Lighthouse Family Center, reviewed R.M.W.'s forensic interviews.  T. at 324-325, 338.  She explained very rarely does a child disclose everything at their first interview.  T. at 326.  It can take "weeks,

months or even years for a child to feel comfortable enough to tell the whole story." *Id.* Ms. Schnirring opined "I was very concerned that this was, in fact, a trauma of sexual abuse that she experienced." T. at 338-339. R.M.W. was "very detailed and specific." T. at 339. Ms. Schnirring concluded (T. at 349):

> In my opinion after paying attention to her childlike language, the idiosyncratic details that she provided, the number of details that she provided, all the context she provided for why she was in certain rooms at certain times, that suggested to me that she has, in fact, experienced the trauma of sexual abuse and that she would probably benefit from specific counseling to address that.

{¶ 43} Ms. Schnirring watched very closely for coaching given "there was a bit of a custody issue going on," but did not see anything that she would typically see with a child who had been coached. T. at 351. On cross-examination, Ms. Schnirring agreed some of R.M.W.'s statements were inconsistent, but "you have to understand how five-year olds talk and how they jump around." T. at 366.

{¶ 44} S.F., appellant's wife, testified for the defense. The children were dropped off at their home in July 2017. T. at 423. She agreed to care for the children for a week. T. at 425. After that, she contacted S.B. to come get the children, but S.B. always had an excuse. T. at 426. They agreed on a date in August for S.B. to pick up the children, but S.B. was a no-show. T. at 427. S.F. then decided to make the situation more permanent so she could enroll R.M.W. in school, take care of the children medically, and receive financial assistance. T. at 430. That is when she

received emergency custody of the children in August 2017. T. at 431. After S.B. agreed in April 2018 to supervised visitation with her children, the allegations against appellant were made. T. at 440-441. At no time did R.M.W. report any incidents involving appellant to S.F. or exhibit any odd or alarming behaviors around appellant. T. at 444.

{¶ 45} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 46} Upon review, given the testimony of R.M.W., Ms. Sherfield, and Ms. Schnirring, we find sufficient evidence, if believed, to support the guilty finding, and we do not find any manifest miscarriage of justice.

{¶ 47} Assignments of Error II and III are denied.

{¶ 48} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Wise, John, J. concur.


EEW/db